CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 23 2013

JULIA C. DUDLEY, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| REBECCA J. HALL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No.: 7:11-cv-298 |
| ) | |
| DLC MANAGEMENT ) | Memorandum Opinion |
| CORPORATION AND FOOD LION, ) | |
| LLC, ) | Hon. James C. Turk |
| ) | Senior United States District Judge |
| Defendants. ) | |
| ) | |
| DLC MANAGEMENT ) | |
| CORPORATION, ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| v. ) | |
| ) | |
| CLEAN-A-LOT, ) | |
| ) | |
| Third-Party Defendant. ) | |
| ) | |
| FOOD LION, LLC, ) | |
| ) | |
| Third-Party Plaintiff/Cross- ) | |
| Claim Defendant, ) | |
| v. ) | |
| ) | |
| SOUTHWEST IMPROVEMENTS, ) | |
| LLC, ) | |
| ) | |
| Third-Party Defendant/Cross- ) | |
| Claim Plaintiff. ) | |

1

In this personal injury case, Plaintiff Rebecca Hall ("Plaintiff" or "Hall") seeks compensation for injuries she suffered when she slipped and fell on black ice in a parking lot in front of Food Lion. Hall sued Food Lion, LLC ("Food Lion") and DLC Management Corporation ("DLC"), the property manager of the strip mall in which the Food Lion was located ("Southwest Plaza"). This matter is presently before the Court on the motions for summary judgment of Food Lion, ECF No. 63, and DLC. ECF No. 66. All the requisite briefs have been filed and the Court heard oral argument on April 17, 2013. The matter is now ripe for disposition. For the reasons that follow, both motions for summary judgment are **DENIED**.

I.     **FACTS AND PROCEDURAL HISTORY**

In considering a motion for summary judgment, a court must consider the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see also MLC Auto., LLC, v. Town of S. Pines, 532 F.3d 269, 273 (4th Cir. 2008). In any event, the facts relevant to the present motions are largely undisputed.

On December 17, 18, and 19, 2009, a large amount of snow fell in the Roanoke, Virginia area. See ECF No. 70-4 at 2. The storm did not spare the Southwest Plaza parking lot. Southwest Improvements, LLC ("Southwest Improvements") is the owner of Southwest Plaza and DLC is its agent.[1] The lease agreement between Southwest Improvements and Food Lion placed upon the former at least the primary responsibility for snow removal. See ECF No. 70-3 at 19. Southwest Improvements and DLC then had a service contract for snow and ice removal with Clean-A-Lot and directed Clean-A-Lot to plow the parking lot after the storm. See ECF No. 70-5

---

[1] Food Lion initially leased the property from Edens & Avant Financing II, LP. ECF No. 70-3 at 1. Southwest Improvements, LLC purchased Southwest Plaza from Edens and Avant in December 2007. ECF No. 70-2 at 9. Southwest Improvements was the owner of Southwest Plaza and Food Lion's landlord at the time of the accident. DLC is an agent of Southwest Improvements. See ECF No. 7-1 at 1.

2

at 2. Clean-A-Lot did so, but Food Lion remained unsatisfied with the condition of the parking lot. Id. at 3. Food Lion personnel implored Brian Doud, a DLC employee, to "get people out here; this is crazy; this is bad." ECF No. 70-6 at 2. Brian Doud was apparently unable to secure another snow removal contractor and allowed Food Lion to hire someone else to clear the remaining snow and ice. Id. at 3. Food Lion hired two contractors to clear the snow and ice: one on December 19, ECF No. 70-7 at 1, and another on or about December 23. Id. at 2. The snow was piled around at least one of the light poles, including the light pole nearer to the Food Lion entrance. There is no evidence of other attempts at snow or ice removal, nor any evidence that DLC inspected the lot after the storm and before the accident giving rise to this litigation.

Over the course of the next two weeks, rising temperatures during the day would sometimes melt the snow in the pile; this water spread from the snow pile. Dropping temperatures at night re-froze the water, creating icy spots in the parking lot. These conditions generally prevailed on December 30. Temperatures had reached 35 degrees the day before and had dropped below freezing overnight. See ECF No. 70-4 at 2. Brent Sowers ("Sowers"), the grocery manager at Food Lion who was responsible for opening the store on the morning of December 30, entered the store at about 6:45 am. He noticed what he described as small ice patches in the vicinity of the snow pile. ECF No. 70-8 at 5.

About four hours later, Hall entered the Food Lion parking lot in her car. Hall was fifty-eight years old and had lived in Roanoke her entire life. After parking and exiting her car, she walked to the Food Lion front door. She saw what appeared to be water and stepped in it, but the wet spot was actually black ice. ECF No. 67-1 at 28. She slipped and fell, fracturing her pelvis and back. Sowers, the head manager on duty at the time, see ECF No. 70-8 at 2-3, was seated in the front office when a customer notified him that Hall had fallen. Id. at 5. Sowers filled out an

incident report, ECF No. 70-10 at 1, and inspected the general vicinity where Hall fell. He determined that she fell on ice caused by the melting and re-freezing of water from the snow pile, ECF No. 70-8 at 6-7, writing in the incident report that there was an "area of melting ice" on the ground. ECF No. 70-10 at 1. Sowers took a bag of Ice Melt from the store and spread it over the ice patches in the parking lot. ECF No. 70-8 at 8-9.

Hall filed suit in this Court on June 27, 2011 against Food Lion and DLC. ECF No. 1. DLC in turn asserted a third-party complaint against Clean-A-Lot; ECF No. 7; Food Lion also filed a third-party complaint against Southwest Improvements, LLC. ECF No. 34. Southwest Improvements filed a cross-claim against Food Lion. ECF No. 36. The Court granted leave for Food Lion and DLC to file cross-claims against each other, ECF No. 23, per some parties' stipulation, ECF No. 21, but these cross-claims have yet to be filed.

## II.  LEGAL STANDARD

Summary judgment is proper where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when a rational trier of fact, considering the evidence in the record as a whole, could find in favor of the non-moving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009). "Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'" Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting Ausherman v. Bank of Am. Corp., 352 F.3d 896, 899 (4th Cir. 2003)). Put differently, summary judgment should be entered if the Court finds, after a review of the record as a whole, that no reasonable jury could return a verdict for the non-moving party. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958-59 (4th

Cir. 1996).

Moreover, a party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citations omitted). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48. Instead, the non-moving party must produce "significantly probative evidence" from which a reasonable jury could return a verdict in his favor. Abcor Corp. v. AM Int'l, Inc., 916 F.3d 924 (4th Cir. 1990). Thus, "[t]he summary judgment inquiry . . . scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

### III. ANALYSIS

The arguments raised by each of the Defendants largely raise identical issues: they each contend that the black ice was an open and obvious hazard, Hall was contributorily negligent, and that she cannot establish that Defendants possessed actual or constructive knowledge of the specific unsafe condition. Food Lion raises an additional argument, that it did not owe a duty to Hall since Southwest Improvements—and, by extension, DLC as its agent—was responsible for the maintenance of the parking lot in front of the Food Lion. The Court will address these arguments in turn.

## A. Open and Obvious Hazard

In this premises liability case, Defendants owe Hall a "duty to exercise ordinary care toward her as its invitee upon [their] premises." Colonial Stores Inc. v. Pulley, 125 S.E.2d 188, 190 (Va. 1962). This duty of ordinary care requires that Defendants keep

> the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the plaintiff of the unsafe condition if it was unknown to her, but was, or should have been, known to the defendant.

Id. The premises owner, however, is not the insurer of the Plaintiff's safety. Langhorne Rd. Apartments, Inc. v. Bisson, 150 S.E.2d 540, 542 (Va. 1966); see also Fultz v. Delhaize Am., Inc., 677 S.E.2d 272, 274 (Va. 2009) (a "storeowner is not an insurer of the invitee's safety on the premises, but must use ordinary care to render them reasonably safe for the invitee's visit." (citing Knight v. Moore, 18 S.E.2d 266, 269 (Va. 1942)).

It is well-established that a plaintiff cannot recover under a negligence theory if "the purported defect of which the plaintiff complains was 'known, visible or obvious' to [her]." Freeman v. Case Corp., 118 F.3d 1011, 1014 (4th Cir. 1997) (citing Wood v. Bass Pro Shops, Inc., 462 S.E.2d 101 (Va. 1995)); see also Harris-Teeter, Inc. v. Burroughs, 399 S.E.2d 801 (Va. 1991) (applying open and obvious defense in negligence). The question of whether a condition is an open and obvious hazard is normally reserved for the jury, but when reasonable minds cannot differ, it becomes a matter for the Court to decide. Fultz, 677 S.E.2d at 275.

Defendants argue that the black ice upon which Hall slipped was an open and obvious hazard as a matter of law because she voluntarily stepped on what she believed was water even though the temperature was below freezing, she had lived in Roanoke her entire life and was aware that snow could melt and re-freeze, and she saw snow piles around the light poles. Plaintiff contends the hazard was not open and obvious as a matter of law because her visit to the

Food Lion occurred almost two weeks after the storm, snow no longer remained at her house, the weather was sunny and clear,[2] the store was open for business, the parking lot looked clear, and she observed the ground as she walked.

Defendants rely primarily on Adkison v. Frizzell, No. 1:11-cv-89, 2012 U.S. Dist. LEXIS 113810 (W.D. Va. August 14, 2012) and secondarily on Wynne v. Spainhour, 205 S.E.2d 634 (Va. 1974). In Adkison, a professional plower finished his work and attempted to visit a store in a shopping center. Finding that the parking lot was not plowed and that the store was closed anyway, he returned two hours later to find that the parking lot had now been plowed. The plaintiff parked his car and opened his door while talking on his cell phone. Seeing what appeared to be wet asphalt, he stepped out of his vehicle. He slipped and fell when the wet asphalt turned out to be black ice. The Court concluded that the hazard was open and obvious and/or the plaintiff was contributorily negligent because he was aware that it had snowed that morning and that he voluntarily stepped in a spot of "wet asphalt." Adkison, 2012 U.S. Dist. LEXIS 113810 at *10. The court dismissed the plaintiff's argument that the black ice was invisible because the plaintiff admitted that it appeared wet. Id. at 11. The court also relied on the fact that the plaintiff failed to show that the defendant had actual knowledge of the black ice. Id. at 11-12.

This case is sufficiently distinct from Adkison to undermine its applicability. First, the snow in Adkison had fallen that morning and the plaintiff was aware that the lot had been plowed within the last two hours. Here, the fall occurred almost two weeks after the snow storm. The risk of walking in a freshly plowed parking lot compared to that of walking in the present lot is significantly different. Second, contrary to Adkison, Hall has produced evidence from which a

---

[2] The Court notes that this is not undisputed, see ECF No. 75-9 at 1 (describing the weather conditions as "cloudy"), but takes the facts in the light most favorable to Hall, the non-moving party, as it must. See Matsushita, 475 U.S. at 587.

7

reasonable jury could find that the Defendants had actual or constructive notice of the hazardous condition. Sowers testified that he saw ice in the parking lot that morning four hours before the fall. See ECF No. 70-8 at 5. Hall has presented evidence that DLC should have been inspecting the site daily "until all risks of snow and ice are gone." ECF No. 75-11 at 2. In short, the facts and evidence distinguish this case from Adkison.

The second case relied upon by Defendants is Wynne, 205 S.E.2d at 634. In Wynne, a few days previous to the plaintiff's fall, a heavy snow had fallen and the lot had been scraped with "tractor and blade." Id. at 635. A few ice spots remained because the temperature remained below freezing in the ensuing days, but the defendant "attempt[ed] thereafter to remove systematically the remaining spots of ice" by spreading rock salt over these spots twice a day, including once three to four hours before the plaintiff's fall. Id. "While passing between two parked cars, [the plaintiff] stepped on what he thought was 'a dark moisture spot.' The spot was in fact ice, and the plaintiff slipped and fell to the pavement, breaking his hip. Id. at 634-35. Emphasizing the defendant's diligence in attempting to remove the remaining ice spots, the Supreme Court of Virginia stated that "the remaining icy spots were open and obvious." Id.

The Court finds Wynne similarly less applicable. The court in Wynne emphasized the defendant's diligence in discussing the openness and obviousness of the hazard, but in this case there is a considerable lack of evidence that Food Lion and DLC had done all they could to eliminate the remaining and re-freezing ice spots in the parking lot.

The operative question is whether reasonable minds can differ that the ice should have been 'known, visible or obvious' to Hall. Brockett v. Harrell Bros., Inc., 143 S.E.2d 897, 902 (Va. 1965). Based on the inconclusiveness of the case law and compelling arguments made by each side, the Court concludes that reasonable minds can differ as to whether the hazard was

open and obvious. The Court cannot rule at this point that the hazard was open and obvious as a matter of law; as such, this question is one for the jury to decide.

### B. Hall's Potential Contributory Negligence

Defendants also argue that Hall was contributorily negligent. While the open and obvious defense and the contributory negligence defense are related, they are not the same. The open and obvious defense focuses on the hazard itself; by contrast, a contributory negligence analysis revolves around the conduct of the plaintiff.

In Virginia, contributory negligence is a complete bar to recovery in a negligence action. Smith v. Va. Elec. & Power Co., 129 S.E.2d 655, 659 (Va. 1963); see also Flakne v. Chesapeake & Potomac Tel. Co. of Va., 97 S.E.2d 650, 652 (Va. 1957) ("One cannot charge another in damages for negligently injuring him when his own failure to exercise due and reasonable care was responsible for the occurrence of which he complains."). This is an objective, and not a subjective, standard. Kelly v. Va. Elec. & Power Co., 381 S.E.2d 219, 223 (Va. 1989). "Generally, questions of negligence and contributory negligence are for the jury . . . but where reasonable men may draw but one inference from the facts, they become questions of law for the court." Smith, 129 S.E.2d at 659. The test is whether the plaintiff "failed to act as a reasonable person would have acted for [her] own safety under the circumstances." Artrip v. E.E. Berry Equip. Co., 397 S.E.2d 821, 824 (Va. 1990).

Based on the record evidence before the Court, the Court cannot conclude that "reasonable men may draw but one inference from the facts" sufficient to convert what is normally a jury question to a question of law. See Smith, 129 S.E.2d at 659. On one hand, Hall saw the snow piles in the parking lot that day, had lived in Roanoke her entire life and was aware that snow and ice could melt and re-freeze, and voluntarily stepped in what appeared to be water.

In fact, Food Lion contends that the crux of this issue is whether it was reasonable for Hall to step in what she thought was water on December 30, 2009. ECF No. 76 at 4. On the other hand, Hall patronized Food Lion almost two weeks after the storm, she had no snow at her home, the weather was sunny and clear, and the parking lot appeared to be in passable condition. Furthermore, invitees like Hall have a right to assume that the premises are reasonably safe for the purpose for which they are invited. Knight, 18 S.E.2d at 269-270. "In the absence of knowledge or warning of danger, [s]he is not required to be on the lookout for it." Id. The question of whether Hall acted reasonably under the circumstances thus depends on the reasonable safety of the premises and whether Defendants exercised ordinary care. While Defendants present compelling evidence from which a jury could conclude that Hall was contributorily negligent, the Court cannot determine at this time that Hall was contributorily negligent as a matter of law.[3]

### C. Defendants' Actual or Constructive Knowledge

Both Defendants argue that the Plaintiff has not produced sufficient evidence to charge them with the actual or constructive knowledge necessary for her to establish a prima facie case. Plaintiff must submit evidence that Defendants possessed "actual or constructive notice of the *specific* unsafe condition that injured *her*." Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 453

---

[3] DLC also argues that Hall assumed the risk of injury when she voluntarily stepped on the wet spot. "Application of the defense of assumption of risk requires use of a subjective standard, which addresses whether a particular plaintiff fully understood the nature and extent of a known danger and voluntarily exposed herself to that danger." Thurmond v. Prince William Prof'l Baseball Club, Inc., 574 S.E.2d 246, 249 (Va. 2003). The mere fact that a plaintiff voluntarily took an action that happened to result in injury does not mean that she assumed the risk of injury by taking that action. The application of the subjective standard requires that Hall fully understood the danger of an action and performed that action anyway. DLC has not pointed to any evidence that Hall subjectively understood the potential danger of black ice in the parking lot. In fact, the evidence is to the contrary: Hall stated she was not thinking of black ice on December 30, 2009. See ECF No. 67-1 at 30 ("Q: Did you know you had to be concerned about black ice when you left your job the morning of this incident to go to Food Lion? A: I was not concerned. Q: Why weren't you concerned? A: I don't have black ice on my mind constantly."). The Court therefore concludes, at least on this evidence, that Hall did not assume the risk of injury when she stepped on the wet spot.

(4th Cir. 2004).[4] Actual knowledge is self-defining; constructive knowledge was explained in this manner by the Supreme Court of Virginia: "[C]onstructive knowledge or notice of a defective condition of a premise or a fixture may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." Grim v. Rahe, Inc., 434 S.E.2d 888, 890 (Va. 1993). Hall argues that Food Lion had actual knowledge and DLC had constructive knowledge.

Hall has presented evidence that Sowers, the grocery manager who was in charge of the store on the morning of December 30, saw ice in the general vicinity of the parking lot where Hall fell when he opened the store that morning. See ECF No. 70-8 at 5. He saw the ice around the snow pile about four hours before Hall fell. Id. at 4. After Hall fell, Sowers inspected the areas where Hall fell and noticed a "small patch of ice which probably was caused due to the melting and refreezing from the pile of snow." Id. at 6. He wrote in the incident report he filled out that there was an "area of melting ice" on the surface of the parking lot. ECF No. 70-10 at 1. While Food Lion claims that there is no evidence of actual knowledge attributable to it, Sower's deposition testimony and the incident report he filled out would allow a reasonable jury to conclude that Food Lion had actual notice of the specific unsafe condition that caused Hall's injury.

As for DLC, much of the above evidence that Sowers was aware of the ice also shows that a reasonable jury could conclude that DLC possessed constructive knowledge. Sowers stated

---

[4] In Hodge, mirrors that fell off a display rack at a Wal-Mart injured the plaintiff. The plaintiff attempted to avoid summary judgment by submitting evidence that merchandise falling off shelves was a common occurrence at Wal-Mart stores across the country. 360 F.3d at 453. The Fourth Circuit rejected this attempt and required knowledge of the specific unsafe condition—falling mirrors at the particular Wal-Mart store. In the present case, the Court is satisfied, based on the evidence and argument before it, that the ice Mr. Sowers saw in the parking lot that morning placed Food Lion on notice of the specific unsafe condition that injured Hall. A reasonable jury could also find that DLC had constructive knowledge of the ice in the parking lot in front of the Food Lion. In other words, the Court does not interpret Hodge to require that Sowers must have actually seen—or should have seen—the exact ice spot upon which Hall slipped and fell, or that DLC should have seen that exact ice spot.

that the ice was "noticeable" at 6:45 am, about four hours before Hall's fall. ECF No. 70-8 at 4-5; see also Grim, 434 S.E.2d at 890 (requiring that the defect be "noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition" to amount to constructive knowledge). Additionally, Hall has submitted evidence that DLC should have been more diligent in the inspection and maintenance of the Southwest Plaza parking lot, especially after being placed on notice of the poor conditions of the parking lot by Food Lion personnel. See ECF No. 75-11 at 2. Indeed, there is no evidence in the record that DLC took any action to ensure the safety of the parking lot for anywhere from seven to twelve days before the accident, despite the fact that melting snow and re-freezing water seems to be entirely predictable when the temperature after a snowstorm vacillates around freezing.[5] See ECF No. 75-6 at 2 (DLC hired Clean-A-Lot to plow the lot and they did so on December 18); ECF No. 70-7 at 2 (Food Lion hired Rite-Way Excavating for two hours of snow removal, which may have happened on December 23—assuming that Food Lion's hiring of Rite-Way can be attributed to DLC). Therefore, on the evidence before the Court, a reasonable jury could conclude that DLC had constructive notice of the dangerous conditions of the lot.

### D. Duty

Food Lion further argues that it did not owe a duty to Hall because it is merely a tenant in the Southwest Plaza. The lease between Food Lion and Southwest Improvements indisputably places primary responsibility for parking lot maintenance and snow removal on Southwest

---

[5] This evidence distinguishes this case from Wynne v. Spainhour, 205 S.E.2d 634, 635 (Va. 1974), in which the premises owner was found not liable because it scraped the lot the day after the storm and "attempt[ed] thereafter to remove systematically the remaining spots of ice." DLC made no such attempts.

Improvements.[6] The question is the scope of the duty owed by a tenant even when another entity bears primary responsibility.

The Supreme Court of Virginia faced a similar issue in Kings Markets, Inc. v. Yeatts, 307 S.E.2d 249 (Va. 1983). In Yeatts, a man slipped and fell in the parking lot in front of a grocery store. The grocery store leased one of eight stores in a shopping center; the lease placed responsibility for maintaining the lot on the landlord. The grocery store and the other tenants used the parking lot in common. When the landlord did not plow the parking lot after a storm, the grocery store hired a contractor to clear the snow from the parking lot. Id. at 182-83. A five-foot swath next to the curb in front of the grocery store remained icy and slushy. Id. at 179. The store attempted to remove the ice formation by breaking it up with hammers and shovels and by spreading rock salt and even table salt on it, but the ice remained. Despite this hazard, the store remained open for business. The Supreme Court of Virginia affirmed the jury's verdict for the plaintiff. The jury had been instructed that if it found that the grocery store had assumed the duty to keep the parking lot in a reasonably safe condition, then the store was responsible for such maintenance. Id. at 182-83. In affirming the jury verdict, the Supreme Court of Virginia emphasized that the grocery store did not care for the parking lot "as a mere gratuitous volunteer or a 'good Samaritan'"; rather, it was in their "best economic interest" to remain open for business. Id. at 183.

The present case is very similar to Yeatts. As in Yeatts, Food Lion was not satisfied with the condition of the common parking lot and hired two independent contractors to remove the

---

[6] See ECF No. 70-3 at 19 ("Landlord shall, at its sole expense, provide for the removal of snow and ice from the Common Area. However, if Landlord fails to notify Tenant within four (4) hours after snow or ice begins to fall that Landlord shall cause said snow or ice to be removed from the Common Area, Tenant may, without prior notice to Landlord, contract for snow and ice removal in the Common Area on behalf of Landlord. Notwithstanding any action taken by Landlord with regard thereto, Landlord shall reimburse Tenant for the cost of said snow and ice removal.")

snow and ice after DLC had already hired Clean-A-Lot to perform the same task. See ECF No. 70-7 at 1-3.[7] Furthermore, the deposition testimony of Brian Doud, a DLC employee, would support a reasonable jury's conclusion that Food Lion assumed the duty of maintaining the parking lot. After accepting that it was within Food Lion's rights under the lease to hire additional plowers, Brian Doud's testimony was that he told Food Lion they could hire someone to plow the parking lot. See ECF No. 70-6 at 3 (Brian Doud recalled his statement to be, "if you have somebody who can come help us right now, hire them, I will pay them. Get them on the property, I will pay them, I will cover it. We need coverage now. So I didn't ask them to hire anyone on my behalf. I said, get someone there now. If you can, go ahead."). His testimony could be interpreted to mean that Food Lion would handle the maintenance of the parking lot in front of Food Lion for some undefined period of time. While not conclusive, this testimony would support a jury finding that Food Lion assumed the duty of caring for the common parking lot.

To be clear, this conclusion does not place liability on Food Lion simply because it is a tenant of Southwest Plaza, as Food Lion claims. See ECF No. 76 at 2-3. It does, however, recognize that the parking lot is essential to the operation of Food Lion's business, keeping the parking lot clear is in Food Lion's best economic interest, Food Lion voluntarily undertook on two occasions to clear the common parking lot of snow, Food Lion thereafter apparently took no action in maintaining the parking lot for a seven- to twelve-day period, Sowers saw ice spots the very morning of the accident and took no ameliorative action, the accident occurred directly in

---

[7] Food Lion argues that there is no evidence that these contractors actually removed snow from the parking lot in general or specifically in the area of Plaintiff's fall because they could have plowed the sidewalk or the employee rear entrance. ECF No. 76 at 2. The Court is under the obligation to draw all reasonable inferences in the light most favorable to the non-moving party. See Matsushita, 475 U.S. at 587; MLC Auto, 532 F.3d at 273. Therefore, the Court assumes that the two independent contractors Food Lion hired plowed the common parking area.

front of Food Lion while Hall was attempting to enter Food Lion, and a Food Lion manager spread Ice Melt on the ice spot after the accident.[8] Based on this evidence, the Court concludes that a reasonable jury could find that Food Lion assumed the duty of maintaining the common parking lot.

## IV.  CONCLUSION

Defendants have not shown as a matter of law that the hazard was open and obvious or that Hall was contributorily negligent. Furthermore, the Court concludes that a reasonable jury could find that both Defendants had either actual or constructive knowledge of the hazardous condition that led to the accident and that each Defendant owed Plaintiff a duty and breached that duty. Therefore, the Court must deny the Defendants' Motions for Summary Judgment.

An appropriate order shall issue this day.

ENTER: This 23rd day of April, 2013.

Hon. James C. Turk
Senior United States District Judge

---

[8] As to this last point, Food Lion argues that its consideration by the Court is inappropriate because this results in "ridiculous outcomes and discourages remedial measures." ECF No. 76 at 4. The Court finds Rule 407 of the Federal Rules of Evidence instructive in this regard. Rule 407 plainly prohibits evidence of subsequent remedial measures to prove negligence, culpable conduct, or a need for a warning. This rule, on the other hand, plainly allows admission of such evidence for other purposes, including "proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407. Based on this distinction, the Court finds it relevant to the question of duty and control that Sower applied Ice Melt to the ice spot.